IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JESSE H. NICHOLSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-954-SLR |
| ) | |
| THOMAS CARROLL, CARL HAZZARD, ) | |
| BERNARD WILLIAMS, DEPARTMENT ) | |
| OF CORRECTIONS, and ANTHONY ) | |
| J. RENDINA, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

1. State the names, last known addresses of all persons who have direct knowledge of or were eyewitnesses to facts alleged in the complaint, noting specifically the eyewitnesses.

**RESPONSE:** See incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

2. Give the names, last known addresses of all persons, other than these listed in the answer to interrogatory #1, who have knowledge of the allegations stated in the complaint.

**RESPONSE:** None at this time. Defendants reserve the right to supplement this response, if necessary.

3. Give the names, last known addresses of all other persons who have knowledge of any facts alleged in any party's pleadings other than those persons named in the answer to interrogatories 1 and 2.

**RESPONSE:** None at this time. Defendants reserve the right to supplement this response, if necessary.

4. State the specific steps that DCC's Multi Disciplinary Team (MDT) and the Institution-Based classification Center (I.B.C.C.) took to insure that the information they relied upon to classify plaintiff to the SHU was correct and accurate.

**RESPONSE:** Defendants have no personal knowledge. However, refer to incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

5. State the reasons, in detail, why defendant's Carroll and Hazzard did not provide plaintiff with an opportunity to present his views to them before being transferred to Isolation Confinement/Pre-Hearing Detention on April 28, 2004.

**RESPONSE:** Defendant Carroll has no personal involvement with plaintiff's transfer to Isolation. Defendants Rendina and Williams have no personal knowledge. However, refer to the inmate written statements in response to disciplinary actions.

6. State the reasons, in detail, why plaintiff spent 15 (fifteen) days in Isolation Confinement/Pre-Hearing Detention, the maximum time allowed pursuant to the correction code of Penal Discipline, without being provided notice of any disciplinary charges against him or an opportunity to tell his side to defendants' Carroll and Hazzard. (His version of the facts)

**RESPONSE:** Defendant Carroll has no personal involvement with plaintiff's transfer to Isolation. Defendants Rendina and Williams have no personal knowledge. However, refer

to the inmate written statements in response to disciplinary actions.

7.  State the reports, memorandums, records, and information that the MDT relied upon to recommend that plaintiff be classified to the SHU.

**RESPONSE:** See incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

8.  State the reports, memorandums, records, and information that the I.B.C.C. relied upon to approve the MDT's recommendation that plaintiff be classified to the SHU.

**RESPONSE:** See incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

9.  State who directed the MDT and I.B.C.C. to classify plaintiff on April 29, 2004 or thereabout, and on May 6, 2004, when plaintiff's classification review was not scheduled until December, 2004.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

10. State the reasons, in detail, why the I.B.C.C. did not state a single reason for classifying plaintiff to the SHU on its classification memorandum, dated May 6, 2004, that was furnished to plaintiff.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

11. State the reasons, in detail, why the I.B.C.C. did not answer plaintiff's classification appeal or his letters. See Exhibits K-1-3, L1-L3, and Q1-3 attached to the complaint.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

12. State who ordered or directed plaintiff's transfer to the SHU on May 4, 2004.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

13. State who directed or ordered Sgt. Joseph Macchiarelli on April 22, 2004 to execute a disciplinary report against plaintiff (Disciplinary report #1009075).

**RESPONSE:** See incident and disciplinary reports and records provided to plaintiff.

14. If another inmate was cited for disciplinary charges in reference to interrogatory #13 state:

    (a) The date the incident originated;

    (b)    The name of the reporting officer;

    (c)    The date of the disciplinary hearing;

and

    (d)    Who was present at the hearing.

**RESPONSE:** See incident and disciplinary reports and records provided to plaintiff.

15.    State in detail why the MDT and I.B.C.C. classified plaintiff to the SHU while he was in Isolation Confinement/Pre-Hearing Detention, and before plaintiff was served with notice of any charges against him and prior to a hearing on any charges.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

16.    State the full names of the members of the MDT and I.B.C.C. classification committee, who facilitated plaintiff's classification to the SHU on May 6, 2004.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

17.    Explain in detail why no disciplinary charges were filed against plaintiff on April 8, 2004 by Cpl. John Coventry, when he found the contraband referred to in disciplinary report #1010825.

**RESPONSE:** Defendants have no personal knowledge. However, refer to Coventry affidavit provided to plaintiff.

18. State the reports, memorandums, records, or information that defendants' Carroll and Hazzard relied upon to transfer plaintiff to Isolation Confinement/Pre-Hearing Detention on April 28, 2004.

**RESPONSE:** Defendant Carroll had no personal involvement with plaintiff's transfer to Isolation. However, see incident and disciplinary reports and records, and the administrative transfer report provided to plaintiff.

19. State the names, last known addresses of all persons who have been interviewed or questioned by you or on your behalf with regard to the facts alleged in the pleadings. In addition thereto state:

    (a)    The date of each interview

    (b)    The substance of each interview; and

    (c)    The names, last known addresses of all persons who have copies of a resume or transcript of each interview.

**RESPONSE:** See incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

20. With reference to any report, memorandum or resume prepared by you or anyone acting on your behalf pertaining to any of the facts alleged or referred to in the pleadings, give the date of each such matter in writing and as to each date given, state:

    (a)    The name, last known address of the person or persons who prepared such

writing and the name, address and identity of the employer of such person or persons; and

    (b)    Whether such writing was prepared by you or on your behalf.

**RESPONSE:** See incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

    21.    State whether your or anyone on your behalf has received any non-medical reports or records with regard to the allegations in the complaint. If yes, state the following:

    (a)    The nature of each report or record;

    (b)    By whom each report was prepared:

    (c)    At whose request they were prepared.

**RESPONSE:** Defendants, Williams, Rendina, and Hazzard have signed off on disciplinary reports and appeals. Defendant Carroll had no personal involvement. See incident and disciplinary reports and records relative to the subject-matter in the complaint.

    22.    Identify each and ever person whom you believe will be called as a witness on your behalf at trial.

**RESPONSE:** Persons identified in the reports and records are potential witnesses for trial. See incident and disciplinary reports and records relative to the subject-matter in the complaint. Defendants reserve the right to supplement this answer in accordance with a pre-trial order, if required.

    23.    Identify each and every document which you intend to rely upon for any purpose in this litigation including but not limited to, direct or cross-examination of any

witnesses at deposition or trial.

**RESPONSE:** See incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

24. If you had or heard any discussions with the plaintiff regarding any allegation in the complaint, if so, describe such discussions in detail.

**RESPONSE:** None.

25. State in specific detail, how defendants' Carroll and Hazzard determined that plaintiff engaged in conduct that warranted his placement in Isolation Confinement on April 28, 2004.

**RESPONSE:** Defendant Carroll had no personal involvement with plaintiff's transfer to Isolation. However, see incident and disciplinary reports and records, and the administrative transfer report provided to plaintiff.

26. State in specific detail, how the I.B.C.C. determined that plaintiff should be classified to Max/SHU segregated housing on May 6, 2004.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

27. Explain in detail, what happened to plaintiff's property that he was not allow to receive, when he was transferred to the SHU on May 4, 2004 or thereabout. If the said property was not disposed of, state where the property is and identify each piece of property.

**RESPONSE:** Defendants have no personal knowledge. However, refer to incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as property records.

28. State in specific detail why the M.D.T. and I.B.C.C. classified plaintiff to continue Max status in the SHU on November 9, 2004.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

29. State in detail why the I.B.C.C. has failed to adhere to the classification regulations, by refusing to entertain plaintiff's classification appeals (Plaintiff's May 6, 2004 and November 9, 2004 classification appeals).

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

30. State in detail why the I.B.C.C. has refused to correct its inaccurate classification records of plaintiff's May 6, 2004 and November 9, 2004 classification. That is, provide plaintiff with specific reasons why he was classified to the SHU.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

    31.    State specifically the reasons why plaintiff was not given a meaningful opportunity to be heard by the M.D.T. and I.B.C.C., when plaintiff was classified on November 9, 2004 to continue Max status in the SHU.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

    32.    Explain in detail why plaintiff is being denied meaningful reviews (every 90 days as prescribed by the classification regulations), whereby his Quality of Life Level is increased to obtain more privileges, and to progress out of the SHU.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

    33.    Since plaintiff's May, 2004 transfer and classification to the SHU, how many and how often has plaintiff received Quality of Life Level reviews.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

    34.    Explain in detail why plaintiff's yearly classification schedule was circumvented. That is, state why plaintiff was classified on May 6, 2004 and November

9, 2004 to Maximum Security when his classification review was not scheduled until December, 2004.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

35. Does DCC's classification regulations or procedures incorporate a point system to determine an inmate's security classification, i.e., minimum, medium, medium-high, or maximum security classification levels. If yes, state the following:

(a) how many classification points did plaintiff have when he was classified to continue medium security on December 11, 2003.

(b) the precise number of classification points needed for an inmate to be placed on each of the four (4) classification levels stated above; and

(c) how does an inmate obtain or accumulate points to be classified to medium-high and maximum security levels.

**RESPONSE:** The Department of Correction inmate classification system incorporates a point system to assist in the determination an inmate's security classification. /s/ Anthony Rendina. Refer to the Delaware Department of Correction Reclassification Form-Risk Assessment sheets provided.

36. Did the Department of Correction, DCC, increase plaintiff's classification points from his December 11, 2003 classification, when he was classified to the SHU on May 6, 2004. If yes, state whether any of the disciplinary reports mentioned in plaintiff's

First Set of Admissions, #10, were relied upon to increase plaintiff's classification points.

**RESPONSE:** Defendants had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see the classification scoring sheet and recommendation provided to plaintiff.

|  |  |
|---|---|
|  | STATE OF DELAWARE<br>DEPARTMENT OF JUSTICE |
|  | /s/Ophelia M. Waters<br>Ophelia M. Waters, I.D. 3879<br>Deputy Attorney General<br>820 North French Street, 6th Floor<br>Wilmington, Delaware 19801<br>(302) 577-8400<br>Ophelia.waters@state.de.us |
| Dated: April 1, 2005 | Counsel for Defendants |