of a conspiratorial fabricated major misconduct report, in response of plaintiff writing letters, filing a grievance complaining of the misconduct of defendant Williams, and speaking up in denouncing a illegal disciplinary hearing conducted by defendant Williams, could ever be deemed consistent with First Amendment principles; nor could this conduct advance a legitimate penological interest under such circumstances.

Thus, it is undisputed that the filing of a grievance and writing letters to prison officials complaining of misconduct of another prison official is protected conduct. Likewise, speaking up and denouncing a illegal disciplinary hearing is protected speech under the <u>Turner v. Safley</u> principles.

Once again, an act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. See <u>Mt. Healthy</u>. Prisoners have a constitutional right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court. Thus, a prison official may not retaliate

25

against a prisoner because that prisoner filed a grievance. This is so even if the adverse action does not independently violate the Constitution. Therefore, to state a cause of action for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred. The allegations in plaintiff's complaint certainly present a chronology of events from which retaliation can be inferred.

To begin with, the retaliatory actions began shortly after plaintiff wrote letters to prison officials complaining about the misconduct of defendant Williams. In fact, the same day plaintiff filed a grievance complaining of the arbitrary conduct of defendant Williams, as set forth above in part III, and the same day plaintiff spoke up and denounced the illegal disciplinary hearing conducted by defendant Williams on April 28, 2004, related to this matter referred to above in part III, plaintiff was arbitrarily placed in solitary or Isolation confinement. Additionally, 3 days after plaintiff

26

was kept in solitary confinement for 15 days, in violation of the Correctional Code of Penal Discipline and the Due Process Clause, the defendants attempted to manufacture a legitimate penological reason for placing plaintiff in solitary confinement, by serving upon plaintiff a falsified and fabricated disciplinary report, #1009266. This also was an overt attempt to cover-up the illegal conduct of Williams'. This is so, because defendant Williams could not have executed the said disciplinary report on May 15, 2004, as indicated by the date on the report, because defendant Williams' did not report to work on that date. See Plaintiff's affidavit at page 6, paragraph 7.

Further, on April 29, 2004, the very next day after plaintiff was arbitrarily placed in solitary confinement the MDT, the Multidisciplinary Team, recommended that plaintiff be classified to Maximum Security (SHU) which was approved by the IBCC on May 6, 2004. The MDT and IBCC claim that their decision to classify plaintiff to the SHU was based on plaintiff's risk assessment

27

and plaintiff's pending major adjustment (MAB) board action, due to some allege behavior during the illegal disciplinary hearing conducted by defendant Williams. However, when plaintiff was classified to the SHU he had no MAB action pending. As admitted by the defendants and indicated by the evidence in the record, plaintiff was not served with notice of any pending MAB action until May 15, 2004. The MDT and IBCC arbitrarily concluded that plaintiff had committed the allege offenses. This conclusion was made despite that no hearing was yet held regarding the matter, and that the evidence refutes that the allege offenses were even committed. Assuming that MAB action was pending, plaintiff's risk assessment score did not warrant his placement in maximum security. See Exhibit O of defendants motion for summary judgment. Plaintiff's risk assessment score was 9 and 17 was needed for placement in the SHU. More importantly,

28

pursuant to the Correctional Code, Sections 300.151 and 300.245 states in relevant part: upon the filing of the appeal form the Hearing officer shall grant a stay of any sanction imposed at the disciplinary hearing until an appeal decision is rendered. The appeal decision was not rendered until April 18, 2005. See Exhibit C attached hereto, nearly 1 year after plaintiff was classified to the SHU.

    Furthermore, when plaintiff's classification was continued to Max status on November 9, 2004, he did not have a pending disciplinary write up. See Nicholson's affidavit at paragraph 8. This was a fraudulent attempt to manufacture a legitimate penological interest in keeping plaintiff segregated in the SHU. Also, see Exhibit D attached hereto. No reason is specified for plaintiff's continued classification to the SHU on the classification results memorandum. See Exhibit E attached hereto, plaintiff's classification appeal (one of them) that the IBCC refused to hear and render a decision,

29