presence, who dated the order April 27, 2004. However, I was placed in solitary confinement on April 28, 2004, not on April 27, 2004.

7. On May 15, 2004, defendant Williams' did not report to work at the Delaware Correctional Center, because that day was a Saturday and defendant Williams' day off, therefore he did not execute the disciplinary report # 1009266 against your affiant as indicated by the date on the report.

8. On November 9, 2004, when your affiant's classification to Maximum Security was continued, he had no pending disciplinary write up. The alleged disciplinary report # 1011939 supplied with the responses to plaintiff's request for production, was never served upon me, nor has an hearing been held pursuant to the Correctional code of Penal Discipline. Also, no reporting officer's signature is present, as mandated by the Penal code. Further, as indicated by the date on the disciplinary report, the report was executed on December 23, 2004, more

than a mouth and half after your affiant's November 9, 2004 classification approval, therefore, it is obvious that no such report was pending.

9. On April 28, 2004, when I was placed in solitary confinement all of my personal property was sent to the prison's property room. This property was permitted by the institutions rules and regulations. The items were purchased through prison's commissary and a outside manufacturer. The items of interest that are not accounted for are: 1 metal Lockerbox; 1 Master Lock with keys; 1 Radio remote control; 1 Am Radio Antenna; 1 FM Radio Antenna; 1 Radio Adapter plug and cord; and a pair of Koss Headphones. I have not been able retrieve these items or ascertain what the prison's property room staff did with this property, because the property room staff will not and have not answered numerous correspondence forwared to them regarding this matter.

10. On April 28, 2004, when defendant Williams conducted the illegal disciplinary hearing, he did not notify Floyd Dixon that your affiant allegedly snatched a piece of evidence off the

7

desk and was trying to tear it up, as claimed in Dixon's unverified incident report. Defendant Williams hollered for Dixon, who was across the hall in another office, because he was fearful that I was going to physically retaliate against him for attacking your affiant. When Dixon entered the office, defendant Williams' began to ask your affiant what I had in my hands, because he thought that I had retrieved a piece of his broken badge. Defendant Williams was not trying to retreive anything from your affiant at anytime regarding this incident.

11. As a result of the events surrounding the illegal disciplinary hearing conducted on April 28, 2004 by defendant Williams, I was arbitrarily charged with fabricated misconduct charges and arbitrarily found guilty of the charges, whereby the charges were arbitrarily affirmed on appeal. See Appeal Decision at Exhibit L. As evident by the heading of the appeal decision, the appeal was decided by a Sussex Correctional Institution employee.

However, the Correctional Code of Penal Discipline is only in force at the Delaware Correctional Center. Nevertheless, your affiant's disciplinary appeal, #1009266, indisputably set forth facts supported by the Penal Code that the said disciplinary charges were executed and decided in contravention of the Penal Code. The appeal decision does not reference a single Penal Code Rule or step to support its reasoning. It simply attempts to explain away that the Penal Code was followed by using generalities. The Penal Code sets forth numerous steps that must be followed before an inmate is sanction for allegedly violating a rule of the institution. Conveyance of the appearence of following some or one of the mandatory rules prescribed by the Penal Code is not sufficient. It is this fallacy that basiege prison officials conduct in this action.

    SWORN TO AND SUBSCRIBED before me on this 14 day of June, 2005.

    _Jesse W. Nicholson Jr._
    Affiant

    _[signature]_
    Notary Public