IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JESSE H. NICHOLSON, JR.,           )
                                   )
          Plaintiff,               )
                                   )
     v.                            )   Civ. No. 04-954-SLR
                                   )
THOMAS CARROLL, CARL HAZZARD,      )
BERNARD WILLIAMS, DEPARTMENT       )
OF CORRECTION, ANTHONY             )
J. RENDINA, DAVID PIERCE, M.       )
SCOTT, EVELYN STEVENSON,           )
JOHN DOE/JANE DOE #1, and          )
JOHN DOE/JANE DOE #2,              )
                                   )
          Defendants.              )

---

Jesse H. Nicholson, Jr., Delaware Correctional Center, Smyrna, Delaware.  Pro se.

Ophelia M. Waters, Esquire, of the Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: September 30, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

Plaintiff Jesse H. Nicholson, Jr., an inmate incarcerated at Delaware Correctional Center, files this 42 U.S.C. § 1983 ("§ 1983") action alleging that defendants violated his First and Fourteenth Amendment rights, as well as his right to privacy under 5 U.S.C. § 552a(g)(1)(c)&(d) ("the Privacy Act").   (D.I. 2, 6, 37)   Currently before the court is defendants' motion for summary judgment, to which opposition and a reply were filed. (D.I. 17, 18, 53, 54, 56)   The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

Essentially, plaintiff's claims emanate from incidents surrounding the search of his cell, the resulting disciplinary hearings and determinations, as well as his transfer to a higher security level in the prison.   Specifically, on April 8, 2004, a routine search was conducted by Correctional Officer John Coventry ("Coventry") on the cell inhabited by plaintiff and Nathaniel Anderson ("Anderson").   (D.I. 2, ex. A-1)   During the search, a wooden smoking pipe was found attached to the back of a drawer in which Anderson kept his possessions.   (Id.)   Anderson denied ownership of the pipe.   According to Coventry:

> Subsequent to the cell search, Anderson approached
> and pleaded with me not to write the incident up as
> a charge against him.   He remained adamant that the
> pipe was not his and again claimed he had no knowledge
> of how the pipe got scotch-taped to the drawer that
> was assigned to him.   I told Anderson that regardless

of how the pipe got there, I had to write him up for
violating institution[al] rules, including for possession
of contraband as he claimed the contents inside the
drawer belonged to him. . . .
After I submitted my disciplinary report on Anderson
which resulted in the matter being referred for further
disciplinary action, I did discuss with hearing officer
[defendant] Williams ("Williams") my concern about the
actual responsibility and ownership of the contraband
that I found.

(D.I. 18, ex. A)

Sometime after disciplinary charges were filed against
Anderson, plaintiff sent a letter to Williams.[1]  (D.I. 18, ex. B,
C; D.I. 2, 6)  On April 20, 2004, a disciplinary hearing was held
to address the charges against Anderson.  (D.I. 18. ex. E)
Plaintiff attended the hearing and asked Williams, "[D]id you
receive the letter I wrote you regarding this matter, and I
thought that writing you regarding this matter was the right

_____

[1]In his complaint, plaintiff admits writing a letter to
Williams.  (D.I. 2, A-1)  Because he has not provided a copy of
this letter, the contents are unknown.  Defendants, however, have
submitted what they contend is the referenced letter.  (D.I. 18,
ex. D)  Although not in perfect condition, the printing does
resemble the printing found in plaintiff's handwritten
submissions.  (Compare D.I. 1, 2, 5, 6, 53)  In this letter, the
author writes, in pertinent part, "Had I known that the officer
was going to write up Mr. Anderson, I would have accepted
responsibility for the contraband."  (D.I. 18, ex. D) In his
opposition to defendants' motion, plaintiff denies writing the
referenced letter and claims it was fabricated by Williams  to
form the basis of the disciplinary charges that were subsequently
filed against him.  (D.I. 53)  Additionally, plaintiff denies
ever claiming, in writing or verbally, ownership of the
contraband.  The court finds that the authorship of this disputed
letter is not a material fact pertinent to the substantive
analysis of the constitutional protections implicated by
plaintiff's claims.

2

thing to do." (D.I. 2) Anderson was found not guilty because it was determined that the contraband actually belonged to plaintiff.[2]

On April 22, 2004, an incident report and notice of disciplinary hearing were filed against plaintiff for his involvement with the contraband. (Id. at exs. G, F; D.I. 2, A-2, A-3)[3] The disciplinary hearing was held on April 28, 2004. Although it is not clear from the record what exactly transpired at the hearing, the record does indicate that plaintiff's letter was used as evidence for his ultimate conviction and that an altercation between plaintiff and Williams, the hearing officer, took place. (D.I. 2 at ¶ 8; D.I. 18, exs. H, I, J; D.I. 56). Plaintiff avers that Williams punched him in the face, resulting in injuries. (D.I. 18, ex. J) The medical notes reflect that plaintiff was treated in the infirmary on April 28, 2004, for "a small superficial abrasion to the left side of [plaintiff's] neck" that was less than one centimeter long. (Id.)

Following the disciplinary hearing, defendants Carroll and Hazzard ordered plaintiff transferred to administrative

---

[2]The disciplinary hearing decision references the hearing officer's receipt of "letter from cellie" wherein the "cellie" "owned up to property (contraband) being his." (D.I. 18, ex. E)

[3]In the inmate signature section for acknowledgment of service of the disciplinary hearing is a notation: "I/M refused to sign." (D.I. 18, ex. G)

3

segregation[4] for fifteen days.  (D.I. 2 at ¶ 10)  Defendant

Rendina affirmed the result of the disciplinary hearing.  (D.I.6

at ¶ 24)  Members of the Multidisciplinary Team ("MDT"),

defendants Pierce and Scott, reviewed the decision and concluded

that plaintiff should be placed in a more restrictive area.

(D.I. 18; 37 at ¶ 32)  On May 6, 2004, the Institutional Based

Classification Committee ("I.B.C.C.") and specifically defendants

Evelyn Stevenson ("Stevenson"), John Doe 1 and John Doe 2,

affirmed the MDT's decision.  (D.I. 18, ex. N; 37 at ¶ 33)

> According to Stevenson:

> The I.B.C.C. members on May 6, 2004 that reviewed
> [plaintiff's] classification were myself . . . the
> decision page shows that the I.B.C.C. approved the
> MDT's recommendation for Maximum security, SHU
> placement based on the April 28, 2004 confrontation
> that [plaintiff] had with Hearing Officer Williams.

(D.I. 56; D.I. 18, ex. N)  On May 17, 2004, plaintiff was

transferred to maximum security and remained in this

classification until approximately January 24, 2005, when he was

reclassified to medium-high security.  (D.I. 53 at 30; D.I. 18,

ex. O)

## III.  STANDARD OF REVIEW

Because the parties have referred to matters outside the

pleadings, defendants' motion to dismiss shall be treated as a

motion for summary judgment.  See  Fed. R. Civ. P. 12(b)(6).  A

---

[4]Referred to as isolation and/or solitary confinement by
plaintiff.  (D.I. 2, 6, 53)

court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(c). The moving party bears the burden of proving that no
genuine issue of material fact exists. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct." Horowitz v. Fed. Kemper
Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal
citations omitted). If the moving party has demonstrated an
absence of material fact, the nonmoving party then "must come
forward with 'specific facts showing that there is a genuine
issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.
Civ. P. 56(e)). The court will "view the underlying facts and
all reasonable inferences therefrom in the light most favorable
to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63
F.3d 231, 236 (3d Cir. 1995). The mere existence of some
evidence in support of the nonmoving party, however, will not be
sufficient for denial of a motion for summary judgment; there
must be enough evidence to enable a jury reasonably to find for

the nonmoving party on that issue.  See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party
fails to make a sufficient showing on an essential element of its
case with respect to which it has the burden of proof, the moving
party is entitled to judgment as a matter of law.  See Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV. DISCUSSION**

   **A.   Procedural Due Process**

   Plaintiff asserts that his Due Process rights were violated
in the following ways:  (1) being transferred to administrative
segregation for fifteen days based on fabricated charges; (2)
having the same person (Williams), who initiated the disciplinary
charges against plaintiff, sit as the hearing officer to consider
those very charges; (3) not receiving adequate notice of the
charges as well as an opportunity to rebut the allegations; (4)
being denied the opportunity to review the institutional penal
code; (5) losing his prison job as the result of the charges and,
consequently, being unable to earn good time credits; and (6)
losing about $200 in personal property as a result of the
transfer to administrative segregation.  (D.I. 2, 6, 37, 53)

   Defendants deny that their conduct violated the Due Process
Clause and contend that plaintiff received adequate notice and a
fair hearing.  Despite notice of the charges and hearing,
defendants aver that plaintiff refused to participate in the

6

disciplinary hearing.  While the Correction Code of Penal
Discipline was provided to plaintiff during previous litigation
and during discovery in this action, defendants contend these
rules "do not have the force of law" and are irrelevant to a due
process analysis.  (D.I. 54)  Nevertheless, defendants maintain
that plaintiff has been given copies of the Code.

The United States Supreme Court has explained that an
examination of claims based on Due Process violations begins with
determining whether a constitutionally protected liberty interest
exists.  Sandin v. Conner, 515 U.S. 472 (1995).  Liberty
interests "protected by the Fourteenth Amendment may arise from
two sources - the Due Process Clause itself and the laws of the
states."  Hewitt v. Helms, 459 U.S. 460, 466 (1983), overruled in
part by Sandin v. Conner, 515 U.S. 472 (1995); Board of Regents
v. Roth, 408 U.S. 564, 575 (1972).  Liberty interests protected
by the Due Process Clause are limited to "freedom from restraint"
which imposes "atypical and significant hardship on the inmate in
relation to the ordinary incidents of prison life."  Sandin v.
Conner, 515 U.S. at 484.

Whether an inmate has suffered an "atypical and significant
hardship" as a result of confinement depends on two factors:  (1)
the amount of time an inmate was placed in disciplinary
segregation; and (2) whether the conditions of his confinement in
disciplinary segregation were significantly more restrictive than

those imposed on other inmates in solitary confinement.  <u>Shoats</u>
<u>v. Horn</u>, 213 F.3d 140, 144 (3d Cir. 2000)(Court found an atypical
and significant hardship where inmate spent eight years in
solitary confinement); <u>Torres v. Fauver</u>, 292 F.3d 141, 151 (3d
Cir. 2002)(finding no protected liberty interest where inmate
held in disciplinary detention for 15 days and administrative
segregation for 120 days); <u>Smith v. Mensinger</u>, 293 F.3d 641, 654
(3d Cir. 2002)(seven months in disciplinary confinement did not
implicate a protected liberty interest); <u>Griffin v. Vaughn</u>, 112
F.3d 703, 708 (3d Cir. 1997)("Given the considerations that lead
to transfers to administrative custody of inmates at risk from
others, inmates at risk from themselves and inmates deemed to be
security risks, etc., one can conclude with confidence that stays
of many months are not uncommon.").

　　　Considering that this court has consistently found that the
Delaware Department of Correction statutes and regulations do not
provide inmates with liberty or property interests protected by
the Due Process Clause, the analysis becomes whether plaintiff's
transfer to administrative segregation for fifteen days
constitutes a violation of Due Process under <u>Sandin</u>.  <u>See</u> <u>Jackson</u>
<u>v. Brewington-Carr</u>, 1999 WL 27124 (D. Del. 1999)(Delaware
statutes and regulations do not provide inmates with a liberty
interest in remaining free from administrative segregation or
from a particular classification); <u>Ross v. Snyder</u>, 239 F. Supp.2d

397, 400-401 (D. Del. 2002)(same).  Spending fifteen days in administrative segregation, the court finds, does not rise to the level of "atypical and significant hardship" defined by <u>Sandin</u> and its progeny.

With respect to plaintiff's complaints about the adequacy of his disciplinary hearing, the court does not find that the record demonstrates a cognizable claim for relief.  Significantly, the Supreme Court has concluded that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  For example, the burden of proof at a disciplinary hearing does not have to be beyond a reasonable doubt, there is no right to counsel, and evidence that would be excluded in an ordinary prosecution can be used.  <u>Id.</u>; see <u>Rusher v. Arnold</u>, 550 F.2d 896, 899-901 (3d Cir. 1977).

Moreover, although, in most instances, an inmate does have the right to have a disciplinary hearing conducted by an impartial decision maker, the standard for impermissible bias is extremely high.  <u>Withrow v. Larkin</u>, 421 U.S. 35, 46-47 (1975).  It is "only in the most extreme cases" where disqualification due to prejudice or bias would be constitutionally mandated.  <u>Id.</u> at 55; <u>see also</u> <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 821 (1986).  Considering the record at bar against this authority,

9

the court finds that plaintiff has not met this threshold.

To the contrary, the record reflects that, after contraband was discovered in plaintiff's cell, defendants responded with filing charges against Anderson, the likely owner considering the location of the contraband.  After receiving plaintiff's letter, charges were filed against him.  The charges were only allegations of misconduct that plaintiff had the opportunity to rebut or disprove at the hearing. Instead, plaintiff's own conduct and reaction to the reading of the letter set in motion the altercation, subsequent charges and transfer to administrative segregation.  Although plaintiff avers that defendants' conduct was inappropriate, the record does not support these assertions.

Plaintiff claims the loss of his prison job has curtailed his ability to earn good time credits, which have the potential to shorten his incarceration.  However, the loss of employment does not implicate a 14th Amendment claim because neither Delaware law nor any other authority creates a liberty interest in the right to participate in a work or education program.  See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975).  Because plaintiff has no property or liberty interest in his employment, he cannot as a matter of law state a claim for violation of due process based on loss of employment.

10

Plaintiff argues that he lost personal property when he was transferred to the higher security level.  When a Due Process violation is alleged for deprivation of property, there is no cause of action under § 1983 if a post-deprivation state remedy exists.  <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), <u>limited by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986); <u>Hudson v.</u> <u>Palmer</u>, 468 U.S. 517 (1984).  Because plaintiff can pursue this claim in a state court action, there is no cognizable Due Process claim.

### B.   Substantive Due Process

Plaintiff states that "[a]t the outset of the said disciplinary hearing, Williams became irate with plaintiff and physically attacked plaintiff because he was asserting his Due Process rights."  (D.I. 2)   In support, he attaches his sworn affidavit as well as the letters he wrote to varied prison officials, complaining about the unprovoked attack.  (D.I. 2)

To maintain a substantive due process claim, plaintiff must demonstrate that the egregious official conduct is so extreme as to shock the court's conscience.  See <u>County of Sacramento v.</u> <u>Lewis</u>, 523 U.S. 833, 841 n.5 (1998); <u>Davidson v. Dixon</u>, 386 F. Supp. 482 (D. Del. 1974).  Construing the record, and particularly the medical notes submitted, in the light most favorable to plaintiff, the court concludes that a reasonable jury could not find that the conduct at issue was so shocking as

11

to implicate the Fourteenth Amendment.

### C.   The Privacy Act

In order to make a valid claim for monetary damages under
the Privacy Act, a plaintiff must show that an agency failed to
maintain accurate records, that it did so intentionally or
willfully and that an "adverse determination" was made respecting
the plaintiff.  <u>Toolasprashad v. Buerau of Prisons</u>, 286 F.3d 576,
583 (D.C. Cir.2002).  In typical Privacy Act cases, it is
"feasible, necessary and proper, for the agency and, in turn, the
district court to determine whether each filed item of
information is accurate."  <u>Id.</u> at 583 (quoting <u>Doe v. United
States</u>, 821 F.2d 694 (D.C.Cir.1987)).  Therefore, in typical
Privacy Act claim cases, the "truth" is "clearly provable" or
"relatively easily ascertainable".  <u>See</u> <u>Deters v. U.S. Parole
Com'n</u>, 85 F.3d 655, 658 (D.C. Cir.1996)(citing <u>Sellers v. Buerau
of Prisons</u>, 959 F.2d 307, 311 (D.C. Cir.1992)).  In contrast,
where determining veracity is not possible for the agency or the
district court, it is sufficient to merely adjust the record to
reflect any uncertainty.  <u>See</u> <u>Toolasprashad</u>, 286 F.3d at 583.

Plaintiff claims that he was subjected to fabricated and
falsified charges by the defendants for his hearing surrounding
the discovery of contraband in his cell.  Plaintiff, however,
cannot make any reasonable allegations that there is an

inconsistency in the record.[5]  In fact, plaintiff's letter
contradicts his allegations that the charges were fabricated and
falsified.  In his letter, plaintiff asserts that he would have
taken the blame for the contraband if he knew his cell mate would
get in trouble.  Instead, when blame did fall on plaintiff, he
claimed that the charges were conjured out of thin air in
retaliation for his assertion of his due process rights.  This
claim fails because the plaintiff has failed to identify any
evidence that the defendants have not accurately maintained their
records.

### D.   First Amendment and Retaliatory Conduct

Plaintiff avers that the disciplinary hearing decision,
subsequent transfer to administrative segregation and continued
confinement in a higher security level were acts of retaliation
by defendants in response to letters he wrote to various prison
officials complaining about these events as the events were
unfolding.  (D.I. 53)  Plaintiff maintains that this retaliatory
conduct infringes upon his First Amendment right "to petition for
redress of grievances."  (D.I. 53 at 22)

"Prison disciplinary hearings may constitute a denial of due
process in the context of civil rights actions under § 1983 when

---

[5]This case, therefore, can be distinguished from Deters,
where the inmate plaintiff was able to show that there were
significant questions regarding how much and when he transported
cocaine and, therefore, the record was inaccurate.

13

they are instituted for the sole purpose of retaliating against an inmate for his exercise of a constitutional right." <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002).  The Third Circuit has explained:

> <u>Sandin</u> instructs that placement in administrative
> confinement will generally not create a liberty interest.
> Retaliation may be actionable, however, even when the
> retaliatory action does not involve a liberty interest.
> Government actions, which standing alone do not violate
> the Constitution, may nevertheless be constitutional
> torts if motivated in substantial part by a desire to
> punish an individual for exercise of a constitutional
> right.

<u>Allah v. Seiverling</u>, 229 F.3d 220, 224 (3d Cir. 2000).  Further, falsifying misconduct reports in retaliation for a prisoner's resort to legal process is a violation of the First Amendment guarantee of access to the courts.  <u>Millhouse v. Carlson</u>, 652 F.2d 371, 374 (3d Cir. 1981).

Plaintiff, in typical fashion,[6] provides the court with a detailed affidavit and summary of the applicable law relating to his allegations that the events in dispute are the result of retaliatory motivation by defendants.  The record indicates otherwise.  The sequence of events started with the uncontroverted discovery of contraband in plaintiff's cell that led to disciplinary charges against plaintiff.  The discipline actually imposed against plaintiff (and to which his complaint is directed), however, is related to his conduct at the hearing and

---

[6]Plaintiff is relentlessly discursive in his submissions.

14

not to the substantive charge.  The fact that plaintiff wrote letters contemporaneously with the events at issue is no evidence of retaliation; it is simply evidence of his penchant for writing.  The record reveals no genuine issues of material fact in this regard.

## V.   CONCLUSION

For the reasons stated, defendants' motion for summary judgment is granted.  An appropriate order shall issue.